UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JANA SHELLMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:05-CV-234-TS |
| ) | |
| COUNTRYWIDE HOME LOANS, INC., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

**A. Background**

The Plaintiff, Jana Shellman, seeks to certify a class action under Federal Rule of Civil Procedure 23(a) and (b). Her claim is based on a mailer she and at least 1,000 other consumers in Indiana received.[1] The mailer stated that its recipients were preapproved for refinance loans from the Defendant, Countrywide Home Loans, Inc. The Plaintiff alleges that the Defendant sent the mailers after accessing their credit reports without their consent and without any permissible reason, contrary to the Federal Credit Reporting Act, 15 U.S.C. § 1681b. The Plaintiff proposes to define the class as "all persons with an Indiana address to whom defendant Countrywide sent or caused to be sent materials in the form represented by Exhibit A to the Complaint on or after July 13, 2003, and before August 2, 2005." (Pf. Mot. Class Cert. 1; DE 65.)

The Defendant objects to class certification and insists that it accessed credit reports lawfully for the purpose of making firm offers of credit to those whose reports it accessed, so

---

[1] The Plaintiff attached the mailer to its Complaint as Exhibit A. The Courts includes a copy of the mailer with this Order.

long as they continued to meet the criteria used for their selection[2] The Defendant argues that the Plaintiff fails the commonality and typicality requirements of class certification because, unlike the majority of the proposed class, she became ineligible for the offer by declaring bankruptcy shortly after the prescreening. The Defendant also asserts that the Plaintiff has a conflict of interest with the class and cannot adequately represent it. Finally, it argues that individual questions of law and fact predominate over any questions common to the members of the class, and that a class action is inferior to other available methods for the fair and efficient adjudication of the case. This Order considers the merits of the Plaintiff's motion to certify the class action.

**B.     Standard for Class Actions**

Federal Rule of Civil Procedure 23 controls class action certification. Subsection (a) sets out four prerequisites:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* In addition, a plaintiff must satisfy at least one requirement of subsection (b). Pertinent here is the third clause: "An action may be maintained as a class action if . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods

---

[2] Section 1681b(c) sets forth limited circumstances in which a credit reporting service may furnish a consumer report without a consumer's consent. "One such instance is when a credit or insurance provider is extending the consumer a "firm offer of credit." *Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2004); § 1681b(c)(1)(B)(i).

for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23 (b)(3). The Court will apply these principles to determine if the class action is appropriate in this case.

**C.    Rule 23(a)**

**(1)    *Numerosity***

The first step under Rule 23(a) is to determine whether "the class is so numerous that joinder of all members is impracticable." *Id.* The Plaintiff submits that the Defendant sent the mailer to her and at least 1,000 other people in Indiana. Such a great number of affected persons would make their joinder impracticable. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969) ("This case involves 151 minority stockholders of Peoria. Certainly that is a sufficient number to permit a class suit to proceed."). The Defendant does not argue otherwise. Accordingly, the Court finds that numerosity exists in this case.

**(2)    *Commonality***

Under the second step of Rule 23(a), the Plaintiff must show that "there are questions of law or fact common to the class." *Id.* "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Here, the common nucleus of fact is the Defendant's allegedly unauthorized access of class members' credit reports and the resulting mailings that did not contain a firm offer of credit. This is sufficient to satisfy Rule 23(a)(2). *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them

3

allegedly illegal form letters or documents.").

### (3) *Typicality*

"The question of typicality in Rule 23(a)(3) is closely related to the . . . question of commonality." *Rosario*, 963 F.2d at 1018. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983).

The Defendant insists that the Plaintiff's claims are not typical of the class she seeks to represent because she became ineligible for the Defendant's offer of credit by filing for bankruptcy after the prescreening:

> Under these circumstances, [the Plaintiff] had no right to access [the Defendant's] "firm offer of credit," because of her personal situation. Logically, she cannot sue [the Defendant] for not making her a firm offer of credit." . . . This defense is fairly unique and will affect only some others in the class—those who, like [the Plaintiff], ultimately failed to meet the criteria. The defense makes [the Plaintiff's] claim atypical of the class as she has defined it.

(Def. Resp. Br. 10; DE 71.)

The Defendant's contention is without merit. Whether the Plaintiff was able to accept the Defendant's offer or an invitation to an offer, whichever may be the case, is not crucial. The Act prohibited the Defendant from accessing the consumers' credit reports without intending to make a firm offer of credit to them. The Plaintiff failure to qualify for the offer did not effect the propriety of the offer, which, according to its terms, not the circumstances of the recipient, either was or was not firm. "How else could someone in [the Defendant's] position know whether it

4

was lawful to obtain credit information in the first place." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 956 (7th Cir. 2006) (noting that the legitimacy of the offer depends on the terms of the offer not on recipient's idiosyncratic circumstances). Therefore, even if the Plaintiff did not qualify for credit from the Defendant, while the rest of the class members did, the claim that the Defendant accessed her report without intending to make a firm offer of credit remains typical of the entire class.

Of course, generally, the inability to accept the offer may effect the amount of damages. However, that is a not pivotal issue here as the actual damages for the vast majority of the class members are nominal, and the Plaintiff is pursuing only the statutory damages. *See GMAC Mortg. Corp.*, 434 F.3d at 955 (noting that consumers' losses stemming from violation of the FCRA's "firm offer clause" are generally minute, making class action for statutory damages justifiable).

(4)   *Adequacy of Representation*

The last prerequisite of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means that the Plaintiff and the rest of the class must not have "antagonistic or conflicting claims," *Rosario*, 963 F.2d at 1018, and the Plaintiff's counsel must be adequate, *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986). The Defendant does not challenge counsel's qualifications to pursue a class action case. It only objects to the Plaintiff representing the class.

The Defendant argues that the Plaintiff has a financial conflict of interest with the proposed class because she has a retainer agreement with her counsel that would make her pay

5

the costs of the lawsuit if she abandoned her claims. Thus, argues the Defendant, she cannot exercise independent judgment and is likely to stay in the case even if her interests are contrary to the class. The Defendant also suggests that the Plaintiff knows little about this case or the class she seeks to represent, further implying that she is an inappropriate class representative. The Plaintiff disagrees with it all.

The Plaintiff is an adequate representative of the proposed class as she has neither antagonistic nor conflicting interests with the rest of the class. First, she received the same mailing from the Defendant as did the rest of the class and her claims do not stand opposite to theirs. Therefore, a victory for her is a victory for the class and the other way around.

Second, she understands the essentials of the case. The Plaintiff worked as a paralegal for several attorneys. She testified that she read a "great deal" of the Fair Credit Reporting Act, including the sections about the firm offers of credit. Before retaining her counsel, she researched them online and made her own judgment that the retainer agreement was fair and reasonable. The Plaintiff testified that she understands her duty to protect the interests of the class. Furthermore, she understands the nature of her claims against the Defendant and has been able to follow the case so far.

Finally, the Plaintiff's retainer agreement creates no conflict of interest between her and the class. If the Plaintiff did not have an agreement with her counsel and if she were to discharge them, under Indiana law, counsel could recover the reasonable value of services provided up to that point. *Kelly v. Smith*, 611 N.E.2d 118, 122 (Ind. 1993) ("It is a well-established legal principle that an attorney who is discharged by a client, with or without cause, may recover the reasonable value of services provided for the client before discharge on the basis of quantum

meruit."). The Plaintiff's contingency agreement limits this liability so that, if the Plaintiff were to discharge her counsel, she would be indebted only for costs and not the fees. Therefore, contrary to the Defendant's contention, the retainer agreement does not increase the likelihood that the Plaintiff will not seek the best interests of the class. *See Hernandez v. Chase Bank USA, N.A.*, slip op. 2006 WL 3782900, *4 (N.D. Ill. Dec. 21, 2006) (finding no conflict of interest where class representative has a retainer agreement with his counsel).

The Plaintiff meets the requirements for being a class representative. Moreover, she has qualified counsel who have undertaken numerous FCRA class action cases. Therefore, the Court finds that she is suited to fairly and adequately protect the interests of the class.

### D.   Rule 23(b)(3)

Since the Plaintiff established the prerequisites under Rule 23(a), the Court now considers Rule 23(b). As it applies here, the Court must determine whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [whether] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23 (b)(3).

The Defendant argues that individual issues predominate over questions common to the class. First, as with the issue of typicality, the Defendant suggests that, if the class were certified, the Court would be faced with the individual circumstances of each class member's ability to accept the Defendant's offer of credit. In addition, according to the Defendant, each class member's damages will vary from person to person requiring individualized considerations. Second, the Defendant submits that class action is not superior to individual suits because the

certification will open the Defendant to an "enormous liability—in a case where it engaged in Congressionally-authorized activity and no evidence exists of tangible harm to the public." (Df. Resp. Br 23; DE 71.)

Both of the Defendant's arguments fail in light of *GMAC Mortgage Corporation*. The Seventh Circuit unequivocally rejected the contention that a class action should not be certified because a defendant would face huge financial losses even though the class members suffered little or no harm:

> The reason that damages can be substantial . . . does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, 15 U.S.C. § 1681n(a)(1)(A), combined with [the defendant's] decision to obtain the credit scores . . . .
> Many lawsuits that authorize statutory damages also limit the aggregate award to any class. . . . Other laws, however, lack such upper bounds. . . . The Fair Credit Reporting Act is in the cap-free group.
> [I]t is inappropriate to use procedural devices to undermine laws of which a judge disapproves. Maybe suits such as this will lead Congress to amend the Fair Credit Reporting Act; maybe not. While a statute remains on the books, however, it must be enforced rather than subverted. An award that would be unconstitutionally excessive may be reduced but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it.

*GMAC Mortg. Corp.*, 434 F.3d at 953–54.

The Court of Appeals also rejected the notion that the questions of whether a defendant made a firm credit of offer and what damages could have resulted require individualized assessments. *GMAC Mortgage Corporation* "has instructed courts in this circuit that the issue of whether a 'firm offer of credit' has been made in situations such as this is a class issue. Moreover whether or not [the defendant] acted willfully in violating the FCRA is a class issue as well." *See*

*Bruce v. Keybank Nat'l. Ass'n*, slip op. 2006 WL 2334846, *4 (N.D. Ind. Aug. 7, 2006) (citing *GMAC Mort. Corp.*, 434 F.3d at 952–53, 55–56). Moreover, if it turns out that any class members have unique claims, they will be given opportunity to opt out from this case.

### E.     Conclusion

For these reasons, the Court grants the Plaintiff's Motion to Certify Class [DE 65]. Furthermore, the Court certifies a plaintiffs' class consisting of *all persons with an Indiana address to whom defendant Countrywide sent or caused to be sent materials in the form represented by Exhibit A to the Complaint on or after July 13, 2003, and before August 2, 2005.*

Finally, the Court sets a scheduling teleconference with the District Court to be held on April 18, 2007, at 12 p.m. The Court will initiate the call.

SO ORDERED on April 12, 2007.

S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

# Countrywide

**FULL SPECTRUM LENDING DIVISION**

Loan Summary Number:
█████████

Offer Expires:
May 4, 2005


FULL SPECTRUM PRE-APPROVED LENDING

**Call 1-800-641-2910**

Dear Jana Shellman,

Congratulations – you are PRE-APPROVED[1] for a refinance loan from Countrywide Home Loans' Full Spectrum® Lending Division and may qualify for up to 90% of your home's value. **Our best refinancing solution is available at 1-800-641-2910.**

The enclosed loan summary should give you some peace of mind. And since you are pre-approved, it is easy to imagine the benefits possible with Countrywide Full Spectrum Lending Division loan:

- streamline monthly bills into <u>one single payment</u>
- possibly use extra cash to <u>pay tax expenses</u>
- exchange high-interest credit card bills for a <u>lower-rate home loan</u>[2]
- reduce high-interest monthly bill payments and <u>increase your available cash</u>
- interest on a refinance loan is usually <u>tax deductible</u>[3]

Here's the good news – Full Spectrum Lending, a Member of the Countrywide® Family, America's #1 residential lender[4] – has the best refinancing solution for you and your home. Here's the great news – <u>we approve 4 out of 5 applicants</u>[4].

**Call 1-800-641-2910 <u>even if your credit is less than perfect</u>.**

You are now pre-approved to refinance. Call us at 1-800-641-2910 to see if you could also cash out some of your home equity to make home improvements, consolidate and pay off bills, buy a new car, pay for school or for any reason.

Review the attached summary for some cash-out details. Then **call 1-800-641-2910** to find out about your cash-out situation that may help you meet your financial goals.

Sincerely,

*Mary Boston*

Mary Boston
Countrywide Home Loans, Inc.
Full Spectrum Lending Division

P.S. Your pre-approved status means the sooner you call us, the sooner we can help you! Call 1-800-641-2910.

## Call 1-800-641-2910 today!

Countrywide's Full Spectrum Lending Division • 35 North Lake Avenue • Pasadena, CA 91101
00024646

# Countrywide

**FULL SPECTRUM LENDING DIVISION**

**FULL SPECTRUM PRE-APPROVED LENDING**

**Status:**
PRE-APPROVED TO REFINANCE

**Our Average Cash Out Amount In (State):**
$14,681.00

**Loan Summary Number:**
████████████

Jana Shellman
████████ IN ████████

**Offer Expiration Date:**
May 4, 2005

**Questions?**
For more information on your pre-approved refinance loan, call customer service at 1-800-641-2910

## Loan Summary Details

| Offer Date | Offer Expiration Date | Description | Amount |
|---|---|---|---|
| 03/02/05 | 05/04/05 | Average refinance cash-out amount in Indiana 12/03-12/04. **You are pre-approved to refinance! Call to see if you can also cash-out some of your home equity.** <br><br> *** SPECIAL NOTICE *** <br><br> Jana, **YOU ARE PRE-APPROVED!** <br><br> <u>Call 1-800-641-2910</u> immediately to confirm receipt of your loan summary. | $14,681.00 |

# Call 1-800-641-2910 today!

Countrywide's Full Spectrum Lending Division • 35 North Lake Avenue • Pasadena, CA 91101
00024646

## Reasons to Choose Countrywide Home Loans® Full Spectrum Lending Division as Your Lender.

- **You get years of experience.** As a division of Countrywide Home Loans, we offer specialized products and the expertise of America's #1 lender.

- **You can save money on your monthly bills.** Call us to see if you also qualify to consolidate your high-interest debt into one monthly payment.

- **You have access to FAST CASH.** Call us to see if you also qualify to refinance and get cash out of your home equity. Our simplified process could put cash in your hands fast.

- **You have options** – <u>even if you've had some credit blemishes.</u>

- **YOU ARE PRE-APPROVED[1].**

## Call 1-800-641-2910 today!
This Loan Summary is not a monthly statement
related to any current home loan that you may have
and is not a bill or invoice.

1. **Terms of pre-approval.**

   You are pre-approved to refinance. This pre-approval is not a firm offer to "cash-out" home equity. Depending on your situation, you may not qualify to refinance <u>and</u> cash out home equity. Minimum loan amount $50,000 in all states except Michigan, $10,000 min in Michigan.

   This offer is based on information obtained from a credit bureau. You received this offer because you met the criteria at the time this information was obtained. Your loan amount and terms may vary, or the offer may be withdrawn, if you no longer meet the credit, income, debt, and property value criteria. Loans are available for up to 90% loan-to-value ratio. Property value is established by an appraisal. A security interest will be taken on your home. You may opt-out of the credit repository prescreening process by contacting:

   Trans Union, Attn: Market Opt-out, P.O. Box 97328, Jackson, MS 39288-7328. Telephone (888) 567-8688.

   Experian Information Solutions, P.O. Box 919, Allen, TX 75013. Telephone (888) 567-8688.

   Equifax Options, P.O. Box 740123 Atlanta, GA 30374-0123. Telephone (888) 567-8688.

   Innovis Data Solutions Inc., Attn: Consumer Relations, 950 Threadneedle, Suite 200, Houston, Texas 77079, Telephone (888) 567-8688

   To receive this special offer for a Countrywide® home loan, you must accurately complete, sign and return a valid application to a Countrywide® loan officer. We will verify your credit status by pulling a credit report, property value, income and other information. Based on this, we will determine the actual loan amount and credit terms available to you and may issue credit on different terms. In certain situations, we may not be able to extend you credit. Offer not intended for recent applications.

2. Refinancing or taking out a home equity loan or line of credit may increase the total number of monthly payments and/or the total amount paid when compared to your current situation.

3. Consult your tax advisor.

4. Based on a credit-only review of applications submitted to underwriting at Countrywide's Full Spectrum Lending Division and does not reflect all applications received.

‡ **Source:** *Inside Mortgage Finance* (Jan. 28, 2005), Copyright 2005

⌂ Equal Housing Lender. © 2005 Countrywide Home Loans, Inc., 4500 Park Granada, Calabasas, CA 91302. Trade/servicemarks are the property of Countrywide Financial Corporation and/or its subsidiaries. Full Spectrum® Lending is a Division of Countrywide Home Loans, Inc. Arizona Mortgage Banker License Number BK8805; Licensed by the Department of Corporations under the California Residential Mortgage Lending Act; Georgia Reg. #5929; Illinois Residential Mortgage Licensee; Massachusetts Mortgage Lender License No. ML 1623; this is not an offer to enter into an interest rate lock-in agreement under Minnesota law; Licensed by the New Hampshire Banking Department; New Jersey (818) 313-6526, Licensed Mortgage Banker, NJ Department of Banking and Insurance; Licensed Mortgage Banker, NYS Banking Department; Registered with the Pennsylvania Banking Department; Rhode Island Lender's License. Some products may not be available in all states. Restrictions apply. All rights reserved.



**FULL SPECTRUM LENDING DIVISION**
35 North Lake Avenue
Pasadena, CA 91101



PRSRT STD
U.S. POSTAGE
**PAID**
COUNTRYWIDE'S
FULL SPECTRUM
LENDING DIVISION

Loan Summary Enclosed
**DATED MATERIALS**